**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ALPHONSE MCGHEE
and LOLITA MCGHEE                                        CIVIL ACTION

VERSUS                                                  NO. 21-652-JWD-SDJ

FAY SERVICING, LLC and
US BANK TRUST NATIONAL
ASSOCIATION AS TRUSTEE
FOR CVF III MORTGAGE LOAN
TRUST II

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Summary Judgment* (the "*Motion*")

(Doc. 6) filed by Defendants Fay Servicing, LLC ("Fay") and US Bank Trust National Association

as Trustee for CVF III Mortgage Loan Trust II ("US Bank") (collectively, "Defendants"). Plaintiffs

Alphonse McGhee and Lolita McGhee (collectively, "Plaintiffs") oppose the *Motion*. (Doc. 12.)

Defendants have filed a reply. (Doc. 20.) Oral argument is not necessary. The Court has carefully

considered the law, the facts in the record, and the arguments and submissions of the parties and

is prepared to rule. For the following reasons, Defendants' *Motion* is granted.

I.      **Preliminary Issues**

        A.  **Violations of Local Rule 56**

        Local Rule 56 requires a party opposing a motion for summary judgment to "submit with

its opposition a separate, short, and concise statement of material facts" that admits, denies, or

qualifies the facts set forth in the moving party's statement of material facts. M.D. La. Local Rule

56(c). The opposing party must also specifically reference the paragraph number of each fact being

admitted, denied, or qualified. *Id.* Additionally, unless a fact is admitted, the opposing party must

support each denial or qualification with a citation to the specific page or paragraph of identified

record material supporting their assertion that the fact is, in whole or in part, incorrect or untrue. M.D. La. Local Rule 56(c), (f).

Here, Defendants properly submitted a short and concise statement of facts they contend are undisputed and material to this case, each of which is set forth in separately numbered paragraphs and supported by citations to the record. (*See* Doc. 6-1 at 2–5.) Although Defendants' statement of undisputed material facts is set forth in their supporting memorandum instead of a separately filed document, the Court finds it sufficiently separate to comply with Local Rule 56(b), as it is distinctly set apart from the remainder of the memorandum by section titled "II. Undisputed Material Facts" and otherwise complies with this rule. Hereafter, the Court will refer to this section of Defendants' memorandum, (Doc. 6-1 at 2–5), as the *Defendant's Statement of Undisputed Material Facts* ("*Def. SUMF*"). In response, Plaintiffs submitted an opposing statement of material facts with their opposition. (Plaintiffs' *Statement of Material Facts* ("*Pl. OSMF*"), Doc. 12-2.) However, Plaintiffs' opposing statement of material facts does not explain what facts Plaintiffs submit are admitted, denied, or qualified. Further, it does not contain any references by paragraph number to Defendants' statement of facts, nor does it contain any citations to the record to support any of Plaintiffs' factual assertions. (*See id.*)

Relevant here, Local Rule 56(f) provides: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, *shall be deemed admitted* unless *properly controverted*." M.D. La. Local Rule 56(f) (emphasis added). As explained above, Defendants properly supported their factual assertions with record citations, and Plaintiffs failed to properly controvert them in accordance with the local rules. For this reason, the facts set forth in Defendants' supporting statement of material facts are deemed admitted for summary judgment purposes.

In addition, the Court is entitled to disregard the facts set forth in Plaintiffs' opposing statement of material facts as "additional facts" for purposes of the instant inquiry. The Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts[,]" and thus "may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id.* Accordingly, because Plaintiffs' statement of material facts, (*Pl. OSMF*, Doc. 12-2), is not supported by citations to the record, the Court need not consider it.

Finally, the Court notes that Plaintiffs' opposition brief repeats some of the facts set forth in their opposing statement of material facts verbatim, (*see* Doc. 12 at 4–5), and that—unlike their opposing statement of material facts, their opposition brief contains *some* citations to the record to support their factual assertions, (*see id.* at 5 (citing Pl. Exs. 1, 2, 3)). Although the facts set forth in Defendants' supporting statement of material facts are deemed admitted for reasons previously explained, "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute." *Braud v. Wal-Mart Stores, Inc.*, No. 17-320, 2019 WL 3364320, at *4 (M.D. La. July 25, 2019) (deGravelles, J.) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998) (holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment.") (citation omitted); *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647, at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.)). Therefore, to the extent the evidence presented by Plaintiffs raises a material issue of fact for trial, the Court will consider it in its analysis.

## II.     Relevant Background

This case arises out of a dispute concerning a mortgage encumbering Plaintiffs' home. On February 21, 2007, Plaintiffs signed a promissory note to purchase immovable property located at 39069 Old Bayou Avenue, Gonzales, Louisiana (the "Property"). (*Def. SUMF*, ¶ 1, Doc. 6-1 at 2.) Pursuant to the note, Plaintiffs promised to pay $262,400.00 plus interest on unpaid principal at a yearly rate of 6.875 percent to the then-lender, Citi Mortgage, Inc., in exchange for their loan. (Ex. A-1, Note, Doc. 6-2 at 5.) The maturity date of this loan was March 1, 2037, giving it a thirty-year term. (*Id.*) To secure the loan, Plaintiffs executed a mortgage encumbering the Property. (*Def. SUMF*, ¶ 2, Doc. 6-1 at 2.)

Eventually, Plaintiffs "fell into default on their payment obligations," (*Def. SUMF*, ¶ 3, Doc. 6-1 at 3), although it is unclear to what extent Plaintiffs were in default on their mortgage. Thereafter, on July 25, 2014, Plaintiffs entered into a loan modification agreement (the "July 2014 Loan Modification") with their loan servicer at the time, Selene Finance, LP. (*Id.*)[1] Pursuant to the July 2014 Loan Modification, Plaintiffs agreed that, as of July 1, 2014, the "new" principal balance amount owed was $334,145.68, "consisting of the unpaid amount(s) loaned to [Plaintiffs] by Lender plus any interest and other amounts capitalized." (Ex. A-3, Doc. 6-2 at 38.) They further agreed that $94,451.21 of the new principal balance would be "deferred[,]" meaning Plaintiffs would not be required to pay interest or make monthly payments on the deferred amount until they either sold the Property, paid off the interest-bearing portion of the principal amount, or the loan matured. (*Id.*) Plaintiffs also agreed to modify the loan's maturity date by extending it to July 1, 2054, making it a fifty-year loan. (*Id.*)

---

[1] The July 2014 Loan Modification also indicates that, at some point before this modification, Citi Mortgage, Inc. ceased being the lender and the lender under the agreement became "Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust . . ." (Ex. A-3, Doc. 6-2 at 37.)

In October of 2014, Plaintiffs modified their loan for a second time (the "October 2014 Loan Modification"). (*Def. SUMF*, ¶ 4, Doc. 6-1 at 3.) Pursuant to this modification, Plaintiffs agreed that, as of September 1, 2014, the "new" principal balance amount owed was $310,317.93, "consisting of the unpaid amount(s) loaned to [Plaintiffs] by Lender plus any interest and other amounts capitalized." (Ex. A-4, Doc. 6-2 at 48.) They further agreed that $70,623.46 of the new principal balance would be "deferred" as defined above, and that the new maturity date of the loan would be September 1, 2054. (*Id.*)

Subsequently,[2] after again falling behind on payments, Plaintiffs entered into a "Forbearance Agreement" with their then-lender, Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Trustee of the Residential Credit Opportunities. (Ex. A-5, Doc. 6-2 at 57.) "In this Forbearance Agreement, Plaintiffs explicitly stated 'I fully understand that my above referenced loan is seriously delinquent. The unpaid balance of principal amount now due upon said promissory note is the sum of **$235, 944.64** with interest thereon at the rate of 4.2500% per annum from [September 1,] 2014.' " (*Def. SUMF*, ¶ 5, Doc. 6-1 at 3 (quoting *id.* (emphasis in original)).) By executing the Forbearance Agreement, the lender made clear it was not "discontinuing the foreclosure proceeding on" the Property, but agreed to hold "in abeyance" any further foreclosure action, provided Plaintiffs make forbearance payments in the amount of $2,060.73 each month until July 1, 2018, (Ex. A-5, Doc. 6-2 at 57), at which point their regular monthly payment of $1,039.36 would be reinstated, (*Def. SUMF*, ¶ 5, Doc. 6-1 at 4.)

---

[2] It is unclear when exactly Plaintiffs entered into the Forbearance Agreement. Defendants submit it was executed on December 2, 2017, (*Def. SUMF*, ¶ 5, Doc. 6-1 at 3), but the Agreement itself indicates otherwise. Though the first line of the Forbearance Agreement indicates it was entered into as of December 22, 2017, it also measures the past due amount as of December of 2016, provides that forbearance payments are to begin on January 1, 2017, and was signed by Plaintiffs on December 30, 2016 and by the lender on January 9, 2017. (Ex. A-5, Doc. 6-2 at 57.) Moreover, Defendants suggest that the Forbearance Agreement was entered into in December of 2016, not 2017, by later labeling June 2017 as being "[d]uring the forbearance period[.]" (*Def. SUMF*, ¶ 6, Doc. 6-1 at 4.) For these reasons, the Court assumes the Forbearance Agreement was executed in December of 2016.

On June 27, 2017, Plaintiffs entered into a third loan modification agreement (the "June 2017 Loan Modification"). (*Id.* ¶ 6.) The June 2017 Loan Modification confirmed that (a) the current unpaid principal balance on the loan was $235,791.09 "with interest thereon[,]" (b) the current accrued or unpaid interest on the loan was $9,197.47, (c) the total amount in arrears was $80,512.57 "good through" June 1 2017, and (d) Plaintiffs were in default for failure to pay installments "plus all accrued late charges, etc." from August 1, 2016 through June 1, 2017. (Ex. A-6, Doc. 6-2 at 59.) By executing the June 2017 Loan Modification, Plaintiffs agreed to increase the unpaid principal balance to $316,303.66 "consisting of the amount(s) loaned to [Plaintiffs] by Lender, which includes the arrears Capitalized of $80,512.57" and to extend the maturity date of the loan to June 1, 2057. (*Id.*)

Additionally, in the June 2017 Loan Modification, Plaintiffs expressly agreed that, in entering into the modification agreement, they exercised their own free will and were neither subjected to coercion nor any other undue influence. (*Def. SUMF*, ¶ 7, Doc. 6-1 at 4 (citing *id.* at 61).) Plaintiffs also "waived and released" the lender from "any and all actions, causes of action, claims, damages, demands, liability and loss arising from or relating to the Loan, including, but not limited to, Consumer's original loan applications and the making, funding and administration of such loan." (*Id.* (quoting Ex. A-6, Doc. 6-2 at 61).) Lastly, by signing the June 2017 Loan Modification, Plaintiffs agreed that said loan modification "represent[ed] the entire integrated agreement between the parties relating to" its subject matter, and that there were "no other agreements or understandings, written or oral, express or implied, tacit or otherwise in respect of the subject matter of [that] Agreement." (Ex. A-6, Doc. 6-2 at 61.)

Thereafter, in October of 2018, Fay became Plaintiffs' new loan servicer. (*Def. SUMF*, ¶ 8, Doc. 6-1 at 4.) According to Defendants, Plaintiffs remained "delinquent on their loan for most

of 2019," leading to their requests for temporary assistance due to Covid-19. (*Id.* ¶ 9.) As a result of those requests, Plaintiffs obtained "Covid-19 Forbearances" for the months of May, June, and July of 2020. (*Id.*) Plaintiffs remained in default on their loan following the end of the Covid-19 forbearance period. (*Id.*)

On February 21, 2021, Fay offered Plaintiffs an opportunity to enter into a "Trial Period Plan" under Fay's Modification Program, informing Plaintiffs that if they complied with the terms of the plan, "Fay would consider them for a fourth loan modification." (*Id.*) Successful completion of the Trial Period Plan required Plaintiffs to, among other things, pay around $6,000.00 over the course of three months. (Ex. A-9, Doc. 6-2 at 85.) Plaintiffs then made their trial period payments pursuant to the plan, and Fay offered them a fourth loan modification. (*Def. SUMF*, ¶ 9, Doc. 6-1 at 4–5.) However, Plaintiffs did not execute the fourth loan modification agreement, and they are currently still in default on their loan, as they have not made any payments since November of 2020. (*Id.* ¶ 9, Doc. 6-1 at 5.)

On October 6, 2021, Plaintiffs filed suit in state court, and the case was subsequently removed to this Court on November 9, 2021. (Doc. 1 at 1; Doc. 1-1.) Plaintiffs assert a total of six claims against Defendants. First, Plaintiffs bring a breach of contract claim, alleging Defendants breached the mortgage agreement by (1) "arbitrarily adding undue fees such as 'Recoverable Corporate Advances[;]' " (2) "failing to apply payments to the mortgage[;]" and (3) "changing the terms of the mortgage to unreasonable terms extending it to [the year] 2057." (*Petition*, ¶ 5, Doc. 1-2.) Second, Plaintiffs bring a detrimental reliance claim under Louisiana Civil Code Article 1967 based on Defendants' allegedly "advising that the home would go into foreclosure if the 2014, 2017[,] and 2021 modifications were not signed[.]" (*Id.*)

7

Third, Plaintiffs bring a claim for unjust enrichment under Louisiana Civil Code Article 2298 based on Defendants allegedly "charging undue and unmerited fees without applying said fees to the mortgage and without explanation as to where the funds are." (*Id.*) Fourth, Plaintiffs assert a claim for fraud under Louisiana Civil Code Article 1953. (*Id.* ¶ 6.) Next, Plaintiffs allege that Defendants "potentially converted and misappropriated funds meant for application to the mortgage to other uses of which are undisclosed" in violation of Louisiana Revised Statute § 14:67(C). (*Id.* ¶ 5.) Lastly, Plaintiffs claim Defendants committed mortgage fraud in violation of Louisiana Revised Statute § 14:71.3. (*Id.* ¶ 6.)

## III.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.") (emphasis in

original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## IV.  Discussion

### A.  Parties' Arguments

#### 1. Defendants' Original Memorandum (Doc. 6-1)

To support their *Motion*, Defendants first argue that Plaintiffs' voluntary execution of three separate loan modification agreements precludes their claims for breach of contract and detrimental reliance as a matter of law. (Doc. 6-1 at 6–7.) According to Defendants, "[a] party

signing a contract is presumed to have consented to its contents and cannot avoid his obligations by contending that he did not read or fully understand it." (*Id.* at 6 (citing *Rao v. Rao*, 2005-0059 (La. App. 1 Cir. 11/4/05), 927 So. 2d 356, 367).) Defendants maintain that, by signing the loan modification agreements, Plaintiffs agreed to the amounts owed on the loan, the new principal balance, and the maturity date of the loan, as those changes were explicitly stated in the terms of those agreements. (*Id.* at 7–8.)

Next, Defendants aver that the breach of contract claim is barred for an additional reason: Plaintiffs' default on their mortgage. (*Id.* at 8.) According to Defendants, in Louisiana, "a party is excused from continued performance of a contract when the other party has materially breached the contract." (*Id.* (citation omitted).) Thus, because "Plaintiffs are in severe default of their mortgage obligations, having not made a mortgage payment since November 2020. . . ." and "they were in default at the time this lawsuit was filed," Defendants argue that Plaintiffs' claim against Defendants for breaching the contract fails as a matter of law. (*Id.*)

Thirdly, Defendants maintain that the claims for detrimental reliance, unjust enrichment, and fraud are barred by the Louisiana Credit Agreement Statute ("LCA"), specifically because Plaintiffs' basis for those claims is their allegation that they were promised their home would go into foreclosure if they did not sign the loan modifications at issue. (*Id.* at 8, 10.) According to Defendants, the LCA precludes a debtor from bringing an action "on a credit agreement" unless the agreement is (among other things) in writing and signed by the creditor and debtor. (*Id.* at 9 (citing La. R.S. § 6.1122).) Further, they claim, there is no exemption to this requirement for fraud, promissory estoppel, "or any other equitable theory." (*Id.* (citing *Whitney Nat'l Bank v. Rockwell*, 94-3049 (La. 10/16/95), 661 So. 2d 1325, 1331).) Therefore, "[b]ecause the Loan Modification Agreements govern the parties' relationship [here], any claims based upon supposed oral promises

that were made to [Plaintiffs] in connection with their loan modification agreements necessarily fail as a matter of law." (*Id.* at 10.)

Next, Defendants submit that the unjust enrichment claim asserted against them additionally fails because "Louisiana law bars claims for unjust enrichment when the claim is based on a relationship that is controlled by an enforceable contract." (*Id.* (citations omitted).) Here, the contractual agreements underlying the parties' relationship includes the original mortgage agreement and the three loan modifications subsequently executed. (*Id.* at 11.) For this reason, Defendants again ask the Court to grant summary judgment on the unjust enrichment claim.

Finally, Defendants address the allegations that they committed theft in violation of La. R.S. § 14:67 and mortgage fraud in violation of La. R.S. § 14:71.3, both of which are criminal offenses. (*Id.*) According to Defendants, a criminal statute is not enforceable by a private party unless that statute explicitly indicates that it provides for a private right of action, and neither of the statutes here provide a civil right of action. (*Id.* (quoting *Berry v. Wells Fargo Bank, N.A.*, No. 20-30670, 2022 WL 728969, at *5 (5th Cir. Mar. 10, 2022)).) Thus, Defendants argue, these claims also fail as a matter of law. (*Id.* at 12.)

### 2. Plaintiffs' Opposition (Doc. 12)

In opposing the *Motion*, Plaintiffs highlight a number of issues they contend are triable and preclude summary judgment, some of which are factual disputes. Specifically, on this point, Plaintiffs argue that the following issues preclude summary judgment: (1) Defendants appear to be intentionally refusing to produce itemized mortgage statements showing how Plaintiffs' payments have been applied to principal and interest; (2) the "new" agreements were actually "offered and executed as new loans with no disbursements of funds under the auspices of a

11

modification[;]" (3) "a recent mortgage statement and other documents" show "exorbitant 'recoverable corporate advances' that appear to be arbitrary in nature with no details as to" their purpose; (4) the extension of the mortgage's maturity date; (5) why the principal balance has increased over time even though Plaintiffs have been paying it since 2007; (6) why Defendants allegedly advised Plaintiffs that their home would go into foreclosure if they did not sign the modifications; (7) the lack of documents produced by Defendants showing the status of the mortgage or arrears at the time the modification agreements were executed. (Doc. 12 at 6–8.)

Plaintiffs' primary argument for their claims seems to rest on the fact that, as reflected in the modification agreements, the principal balance of the mortgage continued to increase over time without explanation or justification. (*Id.* at 8.) Additionally, Plaintiffs assert that they are "without discovery to substantiate some triable facts," (*id.* at 10), because Defendants "have failed to satisfy previous extra-judicial discovery requests" or provide initial disclosures, (*id.* at 2). Plaintiffs argue they are prejudiced by the lack of documentation provided by Defendants and, as such, they request non-movant discovery under Federal Rule of Civil Procedure 56(d). (*Id.* at 8.)

For the most part, Plaintiffs do not address the legal arguments set forth by Defendants in the *Motion*. Plaintiffs' only mention of Defendants' arguments is as follows:

> Defendants allege that "plaintiff's claims fail because they signed modification documents in which they explicitly agreed to amounts owed, the new principal balance and the new loan term" which is at the center of the triable facts as defendants are or should be prevented from materially modifying the mortgage under the theory of "promissory estoppel". Defendants also allege that the plaintiffs' claims should fail because the relationship is governed by contract. The bench market [sic] of a contract is not just that the parties signed, but each contract is governed in accordance with:
>
> 1) Implied duties of "good faith and fair dealing" which the defendants breached by urging the defendants to execute new agreements which only modified the principal balances;
> 2) Whether Duress or Coercion was a factor which it was when defendants told plaintiffs without the signed agreements they "would lose their home";

3) Whether undue influence existed as the possibility of plaintiffs becoming homeless and unable to secure another mortgage was presented;
4) Nondisclosure of the terms of the forbearance or modification extending the mortgage to 50 years;
5) Unconscionability of the ballooned principle balance; and
6) Other rebuttable presumptions that will be shown at the hearing[3] of the matter.

(*Id.* at 9–10.) For the above reasons, Plaintiffs submit that the *Motion* seeking summary judgment should be denied.

### 3. Defendants' Reply (Doc. 20)

In reply, Defendants advance three main points. First, Plaintiffs' claims regarding discovery are unfounded. According to Defendants, they served Initial Disclosures on Plaintiffs on February 17, 2022. (Doc. 20 at 2 (citing Ex. A, Service Email with Initial Disclosures, Doc. 20-1).) Through this same e-mail, Defendants claim they also produced "Plaintiffs' loan file, consisting of 976 pages of documents. . . . [which] consisted of Plaintiffs' note and mortgage, mortgage statements, correspondence and agreements regarding loss mitigation, loan modifications, tax notices, property inspection reports, correspondence with the lender, and other information related to Plaintiffs' loan." (*Id.* (citing Ex. A, Service Email with Initial Disclosures, Doc. 20-1).) According to Defendants, "Plaintiffs do not identify any specific discovery beyond what Defendants have already produced that they need in order to respond to Defendant's Motion, nor do they explain how such discovery will create a fact issue." (*Id.* at 3.) Thus, Defendants argue, "Plaintiffs cannot use their own lack of diligence in reviewing discovery as a means of defeating or delaying summary judgment." (*Id.*)

---

[3] In their opposition brief, Plaintiffs twice allude to a hearing on this matter. (*See* Doc. 12 at 2, 10.) Interpreting this as a request for a hearing on the *Motion*, the Court has determined that a hearing is not necessary to resolve the instant dispute. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720.2 (4th ed.) ("Courts generally recognize the advisability of allowing oral argument on summary-judgment motions, but, even the Fifth Circuit now agrees that the court has the power to order summary judgment without a hearing if it feels that sufficient information is available in the pleadings and the papers in support of and opposition to the motion so that a hearing would be of no utility.").

Next, Defendants maintain that Plaintiffs have not met their burden here because they failed to provide any competent evidence that supports their claims or establishes a fact issue. More specifically, Defendants aver:

> Plaintiffs' Response contains nothing other than unsupported conclusory allegations regarding "an absence of a reasonable and legitimate explanation as to why the mortgage balance ballooned . . . ." Even if Plaintiffs' claims were valid or substantiated, Plaintiffs do not identify how such claims would defeat Fay's matter of law defenses. Plaintiffs provide no evidence demonstrating that any of the principal balances or fees charged on the Modifications were improperly calculated. More importantly, Plaintiffs do not address Defendants' matter of law arguments that: (1) they are bound to the terms of the loan modifications because they admittedly executed the loan modifications which clearly stated the modified loan terms, including the modified principal balances; and (2) their contract claim is barred due to their prior material breach of the contracts in question. Plaintiffs' failure to address Defendants' legal arguments and provide any evidence supporting their claims is fatal to their lawsuit. Summary judgment should be granted in Defendants' favor.
>
> Similarly, Plaintiffs make unsubstantiated, conclusory allegations regarding the implied duty of good faith and fair dealing, duress and coercion, undue influence, unconscionability, and "other rebuttable presumptions that will be shown at the hearing of the matter." Plaintiffs neither cite the Court to any law supporting these theories, nor do they present any arguments, evidence, or specific facts establishing how these theories support their claims in this lawsuit. Plaintiffs' Response provides exactly the type of "metaphysical doubt" and "unsubstantiated assertions" that the Fifth Circuit routinely finds insufficient to defeat summary judgment.

(*Id.* at 4–5 (citations and footnotes omitted).) Accordingly, Defendants submit that Plaintiffs have not satisfied their burden of proof here and, as such, they argue the *Motion* should be granted. (*Id.* at 5.)

Finally, Defendants argue that Plaintiffs abandoned their non-contract claims, as they failed to address any of Defendants' arguments regarding their detrimental reliance, unjust enrichment, fraud, theft, or mortgage fraud claims in their opposition brief. (*Id.*) Therefore, Defendants submit that Plaintiffs have waived any argument as to these claims. Accordingly, Defendants argue these claims should be dismissed.

### B.  Applicable Law and Analysis

### 1. Rule 56(d) Request for Additional Discovery

The Court first addresses Plaintiff's request for additional time and discovery under Federal Rule of Civil Procedure 56(d)(2). "Under Federal Rule of Civil Procedure 56(d), '[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may' take certain actions, including '(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.' " *Bourgeois v. Walmart Inc.*, No. 19-008, 2020 WL 1161928, at *2 (M.D. La. Mar. 10, 2020) (deGravelles, J.). "District courts have discretion to grant or deny a Rule 56(d) motion." *Id.* (citing *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citation omitted)). "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Id.* (quoting *Am. Family*, 714 F.3d at 894) (cleaned up).

"Nevertheless, nonmoving parties requesting Rule 56(d) relief may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* (quoting *Am. Family*, 714 F.3d at 894 (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010))) (cleaned up). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.' " *Id.* (quoting *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561)).

Here, Plaintiffs aver that, "contrary to the status report and scheduling order" in this case, Defendants "have failed to satisfy previous extra-judicial discovery requests thereby prejudicing

[P]lainitffs, as some of [their] contentions arise as a result of mortgage documentation or the lack thereof." (Doc. 12 at 2; *see also* Doc. 12 at 8 ("Discovery was propounded upon defendants prior to and outside of litigation to no avail.").) According to Plaintiffs, "upon obtaining discovery, [they] will show that the lack of information and justification for executing agreements and promissory notes, at best only inflated the mortgage balance and extended the terms." (*Id.* at 9.) Additionally, Plaintiffs submit that "discovery will show why the mortgage balance continues to increase instead of decrease." (*Id.*)

First, it is unclear how the purported "lack of information and justification for executing agreements and promissory notes" that Plaintiffs claim will be adduced by additional discovery is material to the instant dispute. (*Id.* at 9.) The burden is on Plaintiffs to explain how these facts, if produced, will influence the outcome of the pending *Motion*, and Plaintiffs have not done so here. *Bourgeois*, 2020 WL 1161928, at *2 (citations omitted). Moreover, aside from the issue of materiality, this assertion does not identify facts specific enough to justify additional discovery under Rule 56(d), even given the liberal standard. Similarly, by merely contending that "discovery will show why the mortgage balance continues to increase instead of decrease[,]" Plaintiffs have not identified specified facts that they claim will likely be produced, nor have they explained how said facts will affect resolution of the pending *Motion.* (Doc. 12 at 9.)

Plaintiffs do not explain what "extra-judicial discovery" means, the nature of it, circumstances surrounding the "extra-judicial discovery" propounded on Defendants, why Plaintiffs are entitled to responses and, finally, why the failure of Defendants to respond to same requires this Court to deny Defendants' *Motion*. In addition, the record does not reflect that Plaintiffs propounded any formal discovery or, if they did, that Plaintiffs filed a motion to compel Defendants to respond. Finally, Plaintiffs fail to respond to Defendants' assertion that Defendants

voluntarily provided Plaintiffs with their loan file consisting of 976 pages. Without more explanation from Plaintiffs, their request for Rule 56(d) relief must be denied.

### 2. Waiver

As mentioned above, Defendants argue that Plaintiffs have effectively abandoned their claims for detrimental reliance, unjust enrichment, fraud, theft, and mortgage fraud on the basis of waiver. (Doc. 20 at 5.) The Court agrees with Defendants on this point.

"The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (quoting *JMCB, LLC v. Bd. Of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003))); *see also JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that, "to avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases" and holding that, because appellant "failed to do either with regard to its underlying claims, those claims were inadequately briefed and therefore waived") (cleaned up); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (defendant's failure to offer any "arguments of explanation ... is a failure to brief and constitutes waiver").

"By analogy, failure to brief an argument in the district court waives that argument in that court." *Payton*, 2021 WL 2544416, at *26 (quoting *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp 2d at 748 n.10)); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) (citing *United States v. Dominguez-Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008); *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.")); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

In the instant case, Plaintiffs fail to even mention Defendants' arguments concerning their detrimental reliance, unjust enrichment, fraud, theft, and mortgage fraud claims, let alone substantively respond to them. Rather, as Defendants correctly point out, Plaintiffs' opposition brief exclusively focuses on their breach of contract claim. (*See, e.g.,* Doc. 12 at 1 (where Plaintiffs submit that summary judgment is inappropriate because "triable issues of material fact . . . exist as to the breach of the mortgage contract").)

Specifically, Plaintiffs fail to address: (1) whether their detrimental reliance claim fails due to their execution of the subsequent loan modifications; (2) whether their detrimental reliance, unjust enrichment, and fraud claims are barred by the LCA; (3) whether their unjust enrichment claim is additionally barred because of the parties' enforceable contract here; and (4) whether either of the criminal statutes on which they base their theft and mortgage fraud claims provide a private or civil right of action. As a result, the Court finds that Plaintiffs have waived any opposition to Defendants' arguments. Consequently, the Court will grant the *Motion* in this respect and dismiss Plaintiffs' claims for detrimental reliance, unjust enrichment, fraud, theft, and mortgage fraud on the grounds of waiver.

### 3. Breach of Contract Claim

Generally, in order to recover for breach of contract, a plaintiff must prove the following elements: "(1) the obligor's undertaking an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee." *RAMJ Constr., L.L.C. v. Seola Enterprises, Inc.*, No. 17-01789, 2018 WL 3232781, at *2 (M.D. La. July 2, 2018) (quoting *Denham Homes, L.L.C. v. Teche Fed. Bank*, 2014-1576 (La. App. 1 Cir. 9/18/15), 182 So. 3d 108, 119) (citing La. Civ. Code art. 1994). Relevant here, "[i]t is black-letter law in Louisiana that a party asserting a breach of contract must prove a breach of a specific contractual provision." *Grand Isle Shipyards, Inc. v. Black Elk Energy Offshore Operations, LLC*, No. 15-129, 2021 WL 673449, at *3 (E.D. La. Feb. 22, 2021) (citing *Blackstone v. Chase Manhattan Mortg. Corp.*, 802 F.Supp.2d 732, 738 (E.D. La. 2011) (citation omitted)). Therefore, "to state a claim for breach of contract, 'a plaintiff must allege a breach of a specific provision of the contract.' " *84 Lumber Co. v. Paschen*, No. 12-1748, 2017 WL 3425955, at *2 (E.D. La. Aug. 8, 2017) (quoting *Blackstone*, 802 F. Supp. 2d at 738 (citation omitted)); *see Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, No. 11-2002, 2012 WL 630010, at *4 (E.D. La. Feb. 27, 2012) (same); *see also Whitney Bank v. SMI Companies Glob., Inc.*, 949 F.3d 196, 205 (5th Cir. 2020) (finding that the plaintiffs did not breach "Loan 2" because "no written provision of Loan 2" prohibited the plaintiff's actions) (citations omitted).

Here, Plaintiffs claim that Defendants breached the mortgage agreement specifically by: (1) "arbitrarily adding undue fees such as 'Recoverable Corporate Advances[;]' " (2) "failing to apply payments to the mortgage[;]" and (3) "changing the terms of the mortgage to unreasonable terms extending it to [the year] 2057." (*Petition*, ¶ 5, Doc. 1-2.) Each of these allegations of breach will be examined in turn. However, as a preliminary matter, the Court notes that Plaintiffs have failed to identify any provision within the mortgage agreement or its supplementing modifications

that Defendants allegedly breached. On this basis alone, the Court could dismiss the breach of contract claim and find that Defendants are entitled to summary judgment on that claim. *McCoy v. SC Tiger Manor, LLC*, No. 19-723, 2022 WL 4492761, at *7 (M.D. La. Sept. 9, 2022), *report and recommendation adopted*, No. 19-723, 2022 WL 4490158 (M.D. La. Sept. 27, 2022) (finding that the defendant was entitled to summary judgment on the breach of contract claim because the plaintiff "failed to identify the provision [within the lease agreement] allegedly breached by" the defendant). Nevertheless, summary judgment on Plaintiffs' breach of contract claim is warranted for the additional reasons set forth below.

First, the Court finds that Defendants satisfied their burden of demonstrating "the absence of a genuine issue of material fact by pointing out that the record contains no support for" Plaintiffs' breach of contract claim. *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citation omitted). Defendants correctly point out that neither Plaintiffs' nor Defendants' evidence show the existence of facts that could affect the outcome of this breach of contract dispute. Plaintiffs assert that arbitrary fees were wrongfully added to their payments in one instance and that their payments were not actually applied to their outstanding mortgage balance, but their evidence does not support these assertions. Further, as for Plaintiffs' allegations that Defendants breached by adding unreasonable terms—including an extended maturity date and increased principal balance—to the mortgage, Defendants' evidence shows that Plaintiffs agreed to those terms.

Because Defendants properly satisfied their burden for summary judgment purposes, the burden now falls on Plaintiffs to come forward with "specific facts" (properly supported by the evidence) that are both material and create a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *see also Greenfield Com. Credit, L.L.C.*

*v. Catlettsburg Ref., L.L.C.*, No. 03-3391, 2007 WL 97068, at *2 (E.D. La. Jan. 9, 2007) (noting "that substantive law determines the materiality of facts and only 'facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' ") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As discussed in further detail below, the Court finds that Plaintiffs failed to meet their burden here.

The Court first addresses Plaintiffs' claim that Defendants breached the mortgage agreement by "arbitrarily adding undue fees[,]" specifically the "Recoverable Corporate Advances" shown on Plaintiffs' mortgage statement dated June 10, 2022. (*Petition*, ¶ 5, Doc. 1-2; *see* Doc. 12 at 6 (citing Pl. Ex. 4, Doc. 18-4 at 2).) As observed above, Plaintiffs have not pointed the Court to any specific provision of the original mortgage agreement or the modifications that it contends Defendants breached by adding said fees. On the contrary, Section 14 of the mortgage specifically allows the lender to charge Plaintiffs, as the borrowers, "for services performed in connection with [their] default" and provides that "the *absence of express authority* in this Security Instrument to charge a specific fee to [Plaintiffs] shall *not be construed as a prohibition* on the charging of such fee." (Ex. A-2, Doc. 6-2 at 27 (emphasis added).)

This is not to say that the "Recoverable Corporate Advances" at issue are in fact permissible under the above-quoted provision; the Court is unable to make such a determination based on the evidence in the record. The point, however, is that neither can Plaintiffs. "Recoverable Corporate Advances" could include a number of different expenses or fees associated with Plaintiffs' default. Not only do Plaintiffs fail to specify a provision of the contract that prohibits addition of these "fees," but their assertion that said fees are "undue" is both unsubstantiated and conclusory, as they have provided no evidence to back up that allegation. Plaintiffs admit as much in their affidavit: "We do not know what 'Recoverable Corporate Advances' are and why we are

being charged for it[.]" (Pl. Ex. 6, Doc. 18-8 at 2.) Therefore, the Court finds that reasonable minds could not conclude, based on the evidence in the record, that Defendants breached the mortgage agreement by adding the above-mentioned expenses or fees.

The same conclusion is warranted with respect to the claim that Defendants breached the mortgage agreement by failing to apply Plaintiffs' payments to the outstanding balance of the mortgage. The fact that Defendants were obligated to apply Plaintiffs' periodic payments to the loan's outstanding balance is commonsensical. Section 3(A) of the promissory note puts this obligation in writing: "Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal." (Ex. A-1, Doc. 6-2 at 5.)

However, Plaintiffs have failed to show the existence of a genuine dispute as to whether their payments were or were not applied to their loan's outstanding balance. Essentially, Plaintiffs argue that their payments must not have been applied solely because the principal balance increased following the modification agreements they executed, (*see* Doc. 12 at 6),[4] but they fail to present any evidence supporting that assertion save the modification agreements. Indeed, Plaintiffs' affidavit confirms the speculative nature of this assertion: "We do not trust Fay Servicing, LLC and feel that . . . our payments are not going toward reducing the mortgage balance." (Pl. Ex. 6, Doc. 18-9 at 2.) Significantly, Plaintiffs fail to demonstrate that applying a portion of the payments to interest violates the contract or somehow renders the contract unenforceable.

---

[4] Specifically, Plaintiffs claim: "There appears to be an intentional refusal to produce itemized mortgage statements that definitively show how payments have been historically applied to principal and interest;" and "[t]here is an absence of a reasonable and legitimate explanation as to why the mortgage balance ballooned in excess of $70,000 and has remained in excess of $70,000 since 2014 . . ." (Doc. 12 at 6.)

Moreover, the fact that the principal balance increased after Plaintiffs executed the modification agreements in 2014 and 2017 is insufficient alone to create a genuine dispute over whether the payments were applied to the mortgage. Although Defendants do not explain exactly why the modifications increased the principal balance of the loan in their reply brief, both the first and second modification agreements provided that the "new" principal balance owed ($334,145.68 per the July 2014 Loan Modification and $310,317.93 per the October 2014 Loan Modification) "consist[ed] of the unpaid amount(s) loaned to [Plaintiffs] by Lender plus any interest and other amounts capitalized." (Ex. A-3, Doc. 6-2 at 38; Ex. A-4, Doc. 6-2 at 48.) Similarly, the June 2017 Loan Modification increased the "new" unpaid principal balance to $316,303.66 "consisting of the amount(s) loaned to [Plaintiffs] by Lender, which includes the arrears Capitalized of $80,512.57." (Ex. A-6, Doc. 6-2 at 59.)

Thus, based on the evidence in the record, it appears that the principal amounts were increased upon modification of the loan to reflect the amounts of principal that were past due, unpaid interest, and typical fees associated with default. But the Court need not make that finding to award summary judgment on this claim, as Plaintiffs have not presented any evidence showing the principal balance was increased impermissibly due to Defendants' failure to deduct payments Plaintiffs already made. In other words, Plaintiffs have failed to "do more than simply show that there is some metaphysical doubt as to [this] material fact[]." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 (internal citations omitted). As such, they have not carried their burden on this claim.

Finally, the Court considers Plaintiffs' claim that Defendants breached the mortgage agreement by "changing the terms of the mortgage to unreasonable terms[,]" specifically by

increasing the principal balance[5] and extending the maturity date of the loan. (*Petition*, ¶ 5, Doc. 1-2.) For the reasons that follow, this claim also fails. First, the Court has found no provision in the mortgage agreement prohibiting the parties from agreeing to this type of loan modification. Further, the evidence reveals that Plaintiffs did in fact agree to the new terms reflected in each of the three modification agreements.

"Under elementary principles of contract law, one is presumed to have read a contract that one signs[.]" *In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986). "A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it." *Smith v. Leger*, 439 So. 2d 1203, 1206 (La. Ct. App. 1983) (citation omitted). "Thus, except where there is evidence of fraud, misrepresentation, or deceit, one who signs a written contract is bound by its terms[.]" *In re Cajun Elec.*, 791 F.2d at 359; *see Morel v. U.S. Xpress, Inc.*, No. 20-1348, 2020 WL 7318081, at *4 (E.D. La. Dec. 11, 2020).

Plaintiffs point to the fact that the second modification deferred $70,623.46 of the new principal balance, arguing that "[t]here is an absence of a reasonable and legitimate explanation as to why the mortgage balance ballooned in excess of $70,000 . . .[,]" (Doc. 12 at 6), but Plaintiffs agreed to defer that "ballooned" amount by executing the modification agreement. On the first page of the first and second loan modification agreements, the title of the document states: "LOAN MODIFICATION AGREEMENT" with "('Providing for Fixed Interest Rate with *Balloon*')" directly below it. (Ex. A-3, Doc. 6-2 at 37 (emphasis added); Ex. A-4, Doc. 6-2 at 47 (emphasis added).) The "new" or "modified" principal balances are clearly stated in those agreements, as are

---

[5] Although Plaintiffs do not explicitly allege in their *Petition* that Defendants breached the mortgage agreement *by* increasing the principal balance, the Court interprets their argument that Defendants breached by adding unreasonable terms as encompassing both the modified principal balance and modified maturity date of the loan. Thus, for the sake of completeness, both are discussed here.

the other modified terms, including the "ballooned" or deferred amount of principal and the loan's new maturity date. (Ex. A-3, Doc. 6-2 at 37, 38; Ex. A-4, Doc. 6-2 at 47, 48.)

Similarly, the June 2017 Loan Modification clearly provides for a "new" principal balance amount as well as other modified terms. (Ex. A-6, Doc. 6-2 at 59.) In addition, the third modification agreement states: "Consumer has requested that Lender agree to modify the Note as the same may be modified hereby. Lender is willing to do so on the terms set forth herein." (*Id.*) Again, it is undisputed that Plaintiffs executed the three modification agreements mentioned above. Consequently, Plaintiffs are precluded from now arguing they did not understand the terms they agreed to. *In re Cajun Elec.*, 791 F.2d at 359.

Before concluding on this point, the Court notes that, were there "evidence of fraud, misrepresentation, or deceit" here, Plaintiffs would not be bound by the loan modifications they signed. *In re Cajun Elec.*, 791 F.2d at 359; *see Morel*, 2020 WL 7318081, at *4. As explained above, Plaintiffs effectively abandoned their fraud claim for failure to brief that claim in their opposition. However, because Plaintiffs make allegations of fraudulent behavior in connection with the loan modifications, the Court feels the need to address these assertions here, specifically to explain why—despite the alleged fraud—the Court's conclusion that Plaintiffs are bound to the modification agreements remains unchanged.

In the *Petition*, Plaintiffs seem to assert that Defendants engaged in fraud in two ways: first, by purportedly advising Plaintiffs that their home would be put into foreclosure if they did not execute the loan modifications; and second, by impermissibly increasing the principal balance owed on the loan. (*Petition*, ¶ 6, Doc. 1-2 at 9 ("After only two (2) modifications and fifteen (15) years of making mortgage payments, the original balance of the loan has ballooned from [$]262,400 to [$]333,414.37 which has more than an indicia of fraud.").) Despite these allegations,

the Court finds that none of the evidence presented by Plaintiffs could lead reasonable minds to conclude that fraud occurred here.

Article 1953 of the Louisiana Civil Code defines fraud as "a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *McCoy*, 2022 WL 4492761, at *8 (quoting *Shehmohmad v. Ebrahimi*, 06-512 (La. App. 5 Cir. 10/31/06), 945 So.2d 119, 121–122 (citing La. Civ. Code art. 1953)). "A plaintiff may plead fraud based upon information and belief, as long as the complaint sets forth a factual basis for that belief, but this allowance 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' " *Id.* (quoting *Medve Energy Ventures LLC v. Warhorse Oil & Gas LLC*, No. 17-01336, 2018 WL 4089456, at *4 (W.D. La. Aug. 27, 2018)).

Here, the evidence in the record does not create a genuine dispute as to whether Defendants misrepresented the truth to Plaintiffs. As for the purported oral statements that Plaintiffs' home would be put into foreclosure if they did not sign the modifications, the evidence fails to show— and Plaintiffs do not explain—how that statement was a misrepresentation. Critically missing from Plaintiffs' arguments is support for the contention that Defendants were not entitled to put their home in foreclosure following their defaults.

As for the increased principal balance reflected in the loan modification agreements, again, the evidence in the record indicates that the increased principal balances consisted of unpaid amounts of principal, unpaid interest, and other amounts capitalized, (Ex. A-3, Doc. 6-2 at 38; Ex. A-4, Doc. 6-2 at 48; Ex. A-6, Doc. 6-2 at 59), and the third loan modification executed in 2017 specifically noted inclusion of "the arrears Capitalized of $80,512.57[,]" (Ex. A-6, Doc. 6-2 at 59). Plaintiffs allege they have "fifteen (15) years of mortgage payments" under their belts but have

not shown through competent summary judgment evidence how many payments they have actually made. In contrast, Defendants' undisputed facts and evidence show Plaintiffs frequently defaulted on their loan obligations between 2007 and 2014. (*See, e.g., Def. SUMF*, ¶ 3, Doc. 6-1 at 3 (before first modification); Ex. A-6, Doc. 6-2 at 59 (for almost an entire year before third modification); *Def. SUMF*, ¶ 9, Doc. 6-1 at 4 (remaining in default following the Covid-19 forbearance period); *Def. SUMF*, ¶ 9, Doc. 6-1 at 5 (no payments were made between November 2020 and the filing of this lawsuit).)

Hence, Plaintiffs' claims of fraud are not supported by specific facts established by evidence in the record. Rather, they consist of conclusory allegations and unsubstantiated assertions. "Conclusory allegations unsupported by specific facts will not prevent the award of summary judgment; the plaintiff[s] cannot rest on [their] allegations to get to a jury without any significant probative evidence tending to support the complaint." *McCoy*, 2022 WL 4492761, at *8 (citation omitted). No such evidence has been provided. Therefore, the Court finds that no evidence of fraud, misrepresentation, or deceit exists here that would allow Plaintiffs to avoid their obligations under the loan modification agreements. *See In re Cajun Elec.*, 791 F.2d at 359; *see Morel*, 2020 WL 7318081, at *4.

As a final matter, the Court addresses Plaintiffs' vague references to new theories of relief in their opposition to summary judgment. Specifically, Plaintiffs mention the implied duty of good faith and fair dealing, duress, coercion, undue influence, and unconscionability (among other things), (Doc. 12 at 10), none of which is found in the *Petition*. Plaintiffs appear to use these new legal theories as support for their argument that they are not bound by the modification agreements merely because they signed them, but their argument is unclear. (*See id.* at 9–10 ("The bench

market [sic] of a contract is not just that the parties signed, but each contract is governed with . . . [the principles listed above]").)

The opposition does not indicate that Plaintiffs mean to assert new claims based on this perfunctory recitation of legal theories,[6] and Plaintiffs do not cite any authority for their arguments here. Thus, the Court does not interpret Plaintiffs' references here as an attempt to raise new claims, but instead as further argument on their breach of contract claim. And, because they are accompanied by no legal citations and little to no application to the facts, the Court need not consider them. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that, "to avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases" and holding that, because appellant "failed to do either with regard to its underlying claims, those claims were inadequately briefed and therefore waived") (cleaned up); *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

To conclude, although Plaintiffs' situation is no doubt unfortunate, they simply have not met their burden in opposing summary judgment on their claims. They failed to properly controvert any of Defendants' undisputed facts, failed to respond to most of Defendants' legal arguments, and their citations to supporting case law and evidence was, at best, scant. Therefore, the Court

---

[6] Furthermore, if Plaintiffs do mean to assert new claims by way of this language in their opposition, any such request is denied. Plaintiffs previously sought leave to amend their complaint to assert a new theory of recovery, (Doc. 8), and this Court denied that request, explaining that (a) the deadline for amended pleadings had already passed, and (b) Plaintiffs' motion for leave made no effort to establish good cause to extend that deadline pursuant to Rule 16(b)(4), or otherwise show excusable neglect for their untimely filing under Rule 6(b)(1)(B).

finds that Defendants are entitled to summary judgment on the breach of contract claim. Accordingly, in this respect, the *Motion* is granted.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 6) filed by Defendants Fay Servicing, LLC and US Bank Trust National Association, as Trustee for CVF III Mortgage Loan Trust II is **GRANTED**. Consequently, all claims filed by Plaintiffs Alphonse McGhee and Lolita McGhee are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>March 2, 2023</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**